**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| DAVID SCHACHER, | : | CIVIL ACTION NO. |
| BOP Reg # 65255-019, | : | 1:15-CV-2354-WSD-JSA |
|     Movant, | : | |
| | : | CRIMINAL ACTION NO. |
|     v. | : | 1:13-CR-376-WSD-JSA-1 |
| | : | |
| UNITED STATES OF AMERICA, | : | MOTION TO VACATE |
|     Respondent. | : | 28 U.S.C. § 2255 |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant has filed a counseled 28 U.S.C. § 2255 motion challenging his conviction for distribution of child pornography and the 145-month term of imprisonment he received upon the entry of his guilty plea. (Docs. 38, 40; *see* Doc. 33). **IT IS RECOMMENDED** that his motion be **DENIED**.

## I.   Procedural History

A grand jury sitting in the Northern District of Georgia charged Movant with three crimes involving child pornography: distribution (count 1) and receipt (count 2), in violation of 18 U.S.C. § 2252(a)(2) and (b); and possession (count 3), in violation of 18 U.S.C. § 2252(a)(4)(B). (Doc. 1). Movant pled guilty, to count 1 only, via a written plea agreement (Doc. 23-1), and he signed the following addendum to the agreement:

I have read the Indictment against me and have discussed it with my attorney. *I understand the charges and the elements of each charge that the Government would have to prove to convict me at a trial.* I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding. No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement. The discussions between my attorney and the Government toward reaching a negotiated plea in this case took place with my permission. *I am fully satisfied with the representation provided to me by my attorney in this case.*

(*Id.* at 11-12 (emphasis added)).

At his plea hearing, Movant acknowledged the following:

1. he understood the trial rights he was willingly forfeiting by pleading guilty, including the right against self-incrimination (Doc. 35 at 8-15);

2. he understood his plea agreement, and he had received no threats inducing him to plead guilty and no promises other than those outlined in the agreement (*id.* at 15-21);

3. he understood from discussions with the government that the calculated sentencing guideline range for his crime of conviction would most likely be 210-262 months, based on an offense level of 37 and a criminal history category of I, and that the government would then move for a variance to reduce his sentencing range to 135-168 months (*id.* at 31-32);

2

4.    he was satisfied with the representation of his two defense attorneys (*id.* at 34);

5.    he understood the elements of the crime to which he was pleading guilty and what the government would have to prove to convict him (*id.* at 34-37);

6.    he understood that the penalty range for his crime of conviction was a mandatory minimum 5-year sentence and a maximum 20-year sentence (*id.* at 37);

7.    he understood that this Court would not be bound by the sentence recommended by the sentencing guidelines or by the government, including any variance the government might recommend (*id.* at 39, 46, 51-52);

8.    he understood the effect of his appeal waiver and the appeal rights he was relinquishing (*id.* at 47-48); and

9.    he had committed the criminal acts described by the government at the hearing, and he was pleading guilty because he was in fact guilty (*id.* at 53-59).

The Court accepted Movant's plea as knowing and voluntary (*id.* at 61-62) and later sentenced him to a term of 145 months' imprisonment (Doc. 33; *see* Doc. 43-1 (Sent'g Hr'g Tr.)).  Movant did not file a direct appeal.

In his § 2255 motion, Movant presents the following three grounds for relief, alleging ineffective assistance of counsel in each:

1.    [His] offense level was enhanced by five levels based on Probation's conclusion that the offense "involved distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain." [But] there is no assertion in the presentence report or the discovery that [he] actually conducted any in-kind transactions, i.e. bartering or otherwise trading child pornography for other child pornography.

3

Although the PSR [Presentence Report] and the record arguably show that [he] attempted to negotiate such trades, there is no evidence of any completed, in-kind transactions between [him] and others resulting in the acquisition of child pornography. Sentencing counsel did not object to this enhancement, resulting [in his] receiving the five-level enhancement when it was not supported by evidence.

2.   On the advice of counsel, [he] entered a plea to distribution – as opposed to possession – of child pornography which, among other consequences, meant that his base offense level began at 22, not 18, as it would for possession. [But] there is no evidence in the record that [he] knowingly distributed child pornography. Because *mens rea* is an element of every crime which must be proven beyond a reasonable doubt, the government was obliged to prove that [he] knew that he was distributing child pornography in order for him to be guilty under 18 U.S.C. § 2252(a)(2) and (b). Because it could not do so, he was only guilty of possessing child pornography[,] and his attorneys performed deficiently when they advised and encouraged him to plead guilty to distribution, rather than possession, of child pornography.

3.   In addition to the facts alleged in grounds one and two, [he] respectfully notes that there is no evidence that he knowingly distributed child pornography, so as to subject him to enhancement under U.S.S.G. § 2G2.2(b)(3). [He] is aware that the Eleventh Circuit has recently held that the enhancement does not have a *mens rea* element, but notes that there is a split in the Circuits as to that question. Therefore, for the purpose of preservation of the error, [he] respectfully requests that this [Court] reconsider the Eleventh Circuit's position and find that enhancement under 2G2.2(b)(3) does have a *mens rea* element, that counsel therefore performed deficiently in failing to object to such an enhancement in this case and that [Movant] was prejudiced thereby.

(Doc. 38 at 4-6).

4

## II.    Discussion

### A.    The Ineffective-Assistance Standard in the Guilty Plea Context

To prevail on a claim of ineffective assistance, a defendant must establish two things: (1) "counsel's performance was deficient," meaning it "fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). To satisfy the deficient-performance prong, the defendant must show that counsel made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Id.* at 687. The defendant must rebut the strong presumption that his counsel's conduct fell within the range of reasonable professional assistance. *Id.* at 689. A defendant may satisfy the prejudice prong by showing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

*Connolly v. United States*, 568 Fed. Appx. 770, 770-71 (11th Cir. 2014) (noting that

" '[w]hen a defendant pleads guilty relying upon his counsel's best professional

judgment, he cannot later argue that his plea was due to coercion by counsel' "

(quoting *United States v. Lagrone*, 727 F.2d 1037, 1038 (11th Cir. 1984)), and

affirming summary dismissal of § 2255 motion because appellant's "conclusory

allegations of coercion by his attorney [] failed to rebut the strong presumptions that

[(1)] his attorney's advice fell within the range of reasonable professional conduct and

[(2) his] sworn statements in his plea agreement and at his change-of-plea hearing were

true").

5

The Court first considers Movant's second ground for relief, as dictated by the logic of his claims.

**B.      Ground Two: Ineffective Assistance of Counsel for Advising Movant to Plead Guilty to Distribution Rather Than to Possession of Child Pornography**

In Ground Two, Movant claims that his counsel provided ineffective assistance by advising him to plead guilty to distributing child pornography rather than to possessing it. (Doc. 38 at 5).  Movant offers no argument in support of this claim in his counseled supporting memorandum.  (*See generally* Doc. 40).  In his § 2255 motion, he argues that "there is no evidence in the record that [he] knowingly distributed child pornography.  Because *mens rea* is an element of every crime which must be proven beyond a reasonable doubt, the government was obliged to prove that [he] knew that he was distributing child pornography in order for him to be guilty under 18 U.S.C. § 2252(a)(2) and (b)."  (Doc. 38 at 5).  But, as outlined above and explicated further below, Movant *admitted* at his plea hearing — in open court, free of coercion and of false inducement — that he had distributed images that he knew to be child pornography, as defined in the statute he had violated.  Ground Two therefore fails.

"A guilty plea is knowing and voluntary if the defendant entered the plea

6

without coercion and with the understanding of the nature of the charges and the consequences of the plea." *United States v. Speight*, 454 Fed. Appx. 785, 787 (11th Cir. 2011). Evidence that an accused entered his guilty plea knowingly and voluntarily includes "[s]olemn declarations in open court," which "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-75 (1977) (noting that "the representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings"); *see Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (" 'The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.' " (quoting *Blackledge*, 431 U.S. at 74)).

It is apparent from Movant's guilty plea proceedings, as outlined above, that his plea was knowing and voluntary, that it was not coerced and that he was satisfied with his counsel's performance. (*See generally* Docs. 23-1, 35). His guilty plea is therefore valid and enforceable. Movant cannot overcome the strong presumption of truth inherent in his solemn declarations before this Court, *see Blackledge*, 431 U.S. at 74, by presenting, as he has done, nothing more than an unsupported assertion that

7

counsel's unsound advice misled him into pleading guilty to a crime he did not commit.

Movant was charged with distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b). (Doc. 1 at 1). Subsection (a) penalizes anyone who

> (2) knowingly receives, or distributes, any visual depiction . . . or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce . . ., if–
>
> > (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> >
> > (B) such visual depiction is of such conduct[.]

18 U.S.C. § 2252(a)(2). Subsection (b) provides the penalty range of 5-20 years' imprisonment for this crime. 18 U.S.C. § 2252(b)(1). Movant acknowledged at his plea hearing that he had distributed child pornography as defined above. Specifically, Movant admitted that the government's recitation of the evidence against him, set forth below, "accurately describe[d] the conduct in which [he had] engaged" (Doc. 35 at 57):

> On April 26, 2010, a London Metropolitan police officer in the United Kingdom was conducting an online undercover session on GigaTribe, which is a peer-to-peer file sharing network that is commonly used by individuals to trade images of child pornography. During the session, *the undercover officer connected with an individual who used the screen name Munsster . . . and was able to download seven video files believed to be child pornography.* The IP address of the user Munsster was

obtained and determined to be within the United States. The matter was then referred to the FBI in the United States, who obtained records for the IP address associated with Munsster on April 26th, 2010, from Comcast[, whose] records revealed that [Movant] was the subscriber for this IP address. The FBI also obtained and reviewed the files that had been downloaded from Munsster, and found that they consisted of visual depictions of minors engaging in sexually-explicit conduct and that they do meet the definition of child pornography. . . . [The FBI obtained these files] from the officers in London who had downloaded the images[ and who] forwarded that information as well as the IP information of Munsster to the FBI.

On December 12th, 2011, an FBI agent working in an undercover capacity downloaded an additional twelve images from Munsster using that same peer-to-peer network, GigaTribe. The images downloaded during this session did not clearly meet the definition of child pornography. However, on the same day, the undercover agent engaged in a chat session with the user Munsster where the undercover officer [] asked [Movant] if he had PTHC, which is a commonly-used child pornography term meaning preteen hard-core. [Movant] responded that he has all kinds, but he would not share with the agent until he confirmed that the agent also had child pornography images available for him to download. The IP address of Munsster was again captured during this session, and again through Comcast records was verified to be registered to [Movant] at the same residence.

On April 11, 2012, a federal search warrant was executed at [Movant's] residence. [Movant] was the sole resident. Numerous electronic devices were seized during the search of [his] home. Those devices were later forensically analyzed, and they were found to contain thousands of images of child pornography. The majority of the children in the images are between the ages of four to ten years old. An analysis of the devices confirmed that the peer-to-peer network GigaTribe was being used on these devices and that the screen name being used was Munsster. *The forensic review determined that the images that were originally*

9

> *downloaded in April of 2010 by the police officers in London were still contained on [Movant's] computer. Finally, the images obtained from [Movant's] computer were provided to the National Center for Missing and Exploited Children, who have since identified more than two thousand known images of child pornography, and more than 160 videos containing images of known victims of child pornography.*

(*Id.* at 54-57 (emphasis added) (formatting altered)).

This recitation of the evidence shows, at a minimum, that Movant knowingly distributed images of child pornography to a user in London. Movant therefore not only has failed to show that counsel performed deficiently by advising him to plead guilty to distribution of child pornography, he also has failed to show prejudice arising from counsel's performance because he admitted in open court, based on the overwhelming evidence against him, that he had committed the crime of distributing child pornography. Movant's second ground for relief fails.

10

### C.    Grounds One and Three:  The Five-Level Enhancement[1]

### 1.    Movant's PSR

Movant's PSR contains the following description of his use of child pornography.  "On April 26, 2010, the London Metropolitan Police (MPS) conducted an online undercover session in GigaTribe, a peer-to-peer file sharing program, as part of an ongoing investigation. An MPS investigator connected with a user with the screen name 'Mun[]sster' and downloaded seven video files with names consistent with child pornography." (Doc. 47 ("PSR") ¶ 10).  Movant was identified as Munsster, and the material in at least three of the video files was identified as child pornography, including "[a] video file of a minor female, approximately 8 years of age, engaged in what appears to be anal sex with an adult male" and "[a] video file of a minor female, approximately three years of age, with an adult male who is straddling the minor female on a bed masturbating onto the minor female's face."  (*Id.* ¶¶ 11-12).

---

[1]"It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily." *Williams v. United States*, 396 F.3d 1340, 1341 (11th Cir. 2005). "[F]or a sentence-appeal waiver to be enforceable, the government [need only] show that . . . the district court specifically questioned the defendant concerning the sentence appeal waiver during the [plea] colloquy . . . ." *Id.* (internal quotations omitted).  Although Movant's appeal waiver qualifies as knowing and voluntary (*see* Docs. 23-1, 35), which ordinarily would foreclose his § 2255 challenge to his sentence, the Government apparently has chosen not to enforce the sentence-appeal waiver in this case.

On December 12, 2011, FBI SA Timothy Simon, while working in an undercover capacity, accessed the same peer-to-peer file sharing program that [Movant] had used previously. SA Simon made a direct connection to [Movant] and observed that he was sharing four folders that were not password protected. SA Simon viewed thumbnail images within some of the folders and downloaded twelve files plus one partial file before the session ended. The downloaded files contained the titles "IstTeen" or "Lolita," but upon review, the pornographic content of the files could not be distinguished as child pornography.

Later in the day, SA Simon connected to [Movant] and initiated a chat session. During the chat session, SA Simon asked [Movant] if he had PTHC (acronym for pre-teen hard core) images. [Movant] responded by stating, "have all kinds, can you share pass?" There were three password-protected folders on SA Simon's user account at the time. *[Movant] specifically asked for the password to a folder named "pt," then promised to share more of his folders with SA Simon. [Movant] would not provide SA Simon with a password without first seeing that SA Simon possessed child pornograph*y, and no child pornography was traded during the session.

(*Id.* ¶¶ 13-14 (emphasis added)).  Later, a search was conducted at Movant's home.

A review of GigaTribe chat logs from [Movant's] computer revealed that he distributed child pornography in exchange for the receipt of other child pornography. Examples of some of his chat logs are as follows:

a) On November 2, 2011, [Movant] sent Gigatribe user "lolipop 12" the message, *"hello, can you share pass? i have much more to share if you do."* Shortly thereafter, "lolipop 12" sent [Movant] a password.

b) On November 12, 2011, GigaTribe user "vvvxxx" accepted an invitation from [Movant] to become a GigaTribe contact. [Movant] responded to vvvxxx with the statement, *"hello, thanks fr the add. I will share more if you do."*

12

c) On January 1, 2012, GigaTribe user "Cutegirls" sent [Movant] the message, "Do you have pt (Pre-Teen)?" [Movant] later responded, *"nice collection. Just shared more stuff with you.*"

(*Id.* ¶ 20 (emphasis added)).  "A total of approximately 625 videos and 5,434 images depicting child pornography were located on the computer equipment seized from [Movant's] house[,]" including "[a]pproximately 689 [] images and videos portray[ing] sadistic or masochistic conduct."  (*Id.* ¶ 19).  The PSR's descriptions of just a few of these videos are absolutely horrifying.  (*See id.*).

## 2. The Sentencing Hearing

At sentencing, the Court made the following comments:

> But there are [few] cases that have images of this – disturbing is such an understatement. Very few times have I looked at these images and felt ill. These are images that made me feel ill. And, in fact, there were a couple I couldn't watch the whole image. And I'm pretty tough and hardened to this because I have been doing it for a long time, but these were different. And I just can't imagine what it's like to sit in front of a computer and to watch children violated the way these kids were violated, and the destruction of their lives, some of which I can only imagine because they were kids that were abused in this awful way overseas. And to think that that's been going on for ten years is just unimaginable. That regardless of what somebody's background is, that they can sit in front of a screen and watch what I watched and get some sort of sexual satisfaction clearly and unequivocally disturbingly at the expense of children. This is a different case for me because of the nature of the images.

(Doc. 43-1 at 20 (formatting altered); *see id.* at 22 ("And [Movant] is a perfect example

13

of somebody whose insatiable appetite for this filth increasingly had to be accommodated.")).

The prosecutor noted that Movant "had over five thousand images and 625 videos, which is over 50,000 images. So this is among the largest collections that we have seen in this district, at least." (*Id.* at 32; *see id.* (Movant's collection is full of "very violent, very graphic, terrible images. These are not ones that are borderline child pornography. These are extremely violent images of children essentially being raped. And it's not just images that he found offhand, it's not simply a small portion. It's the majority of his collection.")).  And Movant was "actively on chat logs . . . where he specifically says, I want to see what you have before I give you anything that I have. And this is active distribution where he was intentionally putting these images out in the community for his own benefit so that he could obtain more." (*Id.* at 33).

Movant's adjusted total offense level was 37 (PSR ¶ 36), with a recommended sentencing range of 210-262 months' imprisonment (*id.* at 23).  Without the five-level enhancement, his total offense level would have been 32, and his recommended sentencing range would have been 121-151 months.  *See* U.S.S.G. ch. 5, pt. A, Sentencing Table.  Movant's sentence of 145 months' imprisonment falls within the latter, reduced range, and it is 65 months below the 210-month minimum sentence

14

using the enhanced range.  Although the minimum term of supervised release was five years (*see* PSR at 23), the Court sentenced Movant to a term of fifteen years (Doc. 43-1 at 51).

### 3.      Movant's Arguments

In Ground One, Movant claims ineffective assistance of counsel for not objecting to the five-level sentencing enhancement he received under U.S.S.G. § 2G2.2(b)(3)(B).  (Doc. 38 at 4).  In Ground Three, Movant argues that there is no evidence that he knowingly distributed child pornography, which undercuts the *mens rea* requirement for the five-level enhancement.  (*Id.* at 6).  In his counseled memorandum, Movant argues that the Sentencing Commission "intended the enhancement to be given to a defendant who is conducting specific, *quid pro quo* transactions where he is distributing child pornography in order to expand the quantity of child pornography he possesses," and that in this Circuit, "two elements [are] required to show that the enhancement [is] merited: first, that the defendant made child pornography files available and, second, that he did so expecting to receive something of value in return."  (Doc. 40 at 10-11).

Movant distinguishes his case from those where the enhancement was correctly applied by contending that his "PSR does not disclose any instances where [he]

15

actually 'made [child pornography] available for others to view' in exchange for anything of value." (*Id.* at 11). Movant argues (1) "the PSR does not show that the files he was making available were child pornography" and (2) "in all instances cited by probation, [he] was merely *negotiating* to distribute pornography and never actually did so in exchange for anything of value." (*Id.* at 12; *see id.* at 13 ("The conversations recounted in the PSR show no indication as to what [Movant] was sharing, so it is equally likely that he was not sharing his, 'illicit image collection,' to obtain whatever he was attempting to obtain (another unknown based on the conversations).")). Movant concludes:

> Had counsel objected to the enhancement, [his] offense level would have been five levels lower. Granting that the sentence imposed was already below [his] recommended guideline range [], it is fair to conclude that, had the guidelines been properly calculated after objection, [his] sentence would have been proportionately lower as well, particularly in light of the Court's discussion of the two-point computer enhancement which was imposed.

(*Id.* at 14). His increased sentence, Movant argues, reveals the prejudice arising from counsel's deficient performance in failing to object to the five-level enhancement. (*Id.*).

Finally, while acknowledging that "the Eleventh Circuit has very recently joined the Fifth and the Tenth Circuits in saying that there is no *mens rea* requirement for the

16

enhancement," Movant argues in support of Ground Three that the government did not

prove that he "knowingly distributed child pornography for something of value," and

he therefore "urge[s] this Court to reconsider the issue so that it might bring the law

in harmony with the Second, Fourth, Seventh and Eighth Circuits." (*Id.* at 15-16).

### 4.    The Government's Response

The government responds by first defining distribution of child pornography,

Movant's crime of conviction, in the context of his five-level enhancement:

> Under U.S.S.G. § 2G2.2(b)(3)(B), a five-level enhancement applies if the
> offense involved "distribution for the receipt, or expectation of receipt,
> of a thing of value, but not for pecuniary gain." Distribution is any act
> related to the transfer of the material: including possession with the intent
> to distribute, transmission, and advertisement of material involving the
> sexual exploitation of a minor. U.S.S.G. § 2G2.2(b)(3)(B), comment. n.1.
> There is no *mens rea* requirement expressed or implied by the guidelines.
> *United States v. Creel*, 783 F.3d 1357, 1360 (11th Cir. 2015). A
> defendant who makes child pornography files accessible to other users of
> a peer-to-peer file sharing program has distributed child pornography
> under the [g]uidelines. *United States v. Spriggs*, 666 F.3d 1284, 1287
> (11th Cir. 2012).

(Doc. 43 at 6-7).  The enhancement applies to " 'any transaction, including bartering

or other in-kind transaction, that is conducted for a thing of value, but not for profit.' "

(*Id.* at 7 (quoting U.S.S.G. § 2G2.2 cmt. n.1.)).

The government argues that "[t]he expectation of a thing of value is sufficient

17

to trigger the enhancement, regardless of whether there was an actual exchange at all."

(*Id.* (citing *United States v. Maneri*, 353 F.3d 165, 170 (2d Cir. 2003))).   The

government notes that the PSR contains examples of Movant making "his files

available on Gigatribe with the expectation of receiving something of value — more

pornography." (*Id.* at 7-8).  In particular:

> The interaction with the undercover agent is instructive as to [Movant's] expectation and his reasons for using Gigatribe. [Movant] had certain files that were not password protected, which had names suggestive of child pornography: "1st Teen" or "Lolita." (PSR ¶ 13.) After downloading these images, the agent requested "PTHC" from [Movant], who responded that he "has all kinds," but wanted to see the agent's password protected "pt" folder before he would share. (PSR ¶ 14.) Of course, the agent could not actually send petitioner child pornography, and so no images were exchanged during that chat; nevertheless, it provides clear evidence of [Movant's] intent in making files available on Gigatribe. [And] because distribution is defined as any act related to the transfer of the material, including possession with the intent to distribute, [Movant's] argument that the enhancement should not have applied because there was no evidence of a completed transaction is meritless.

(*Id.* at 8-9; *see also id.* at 9 ("It is a fair inference from a review of the January 2012

chat that the petitioner shared child pornography (since the request was specifically for

'pt') after viewing another user's files." (citing PSR § 20)); *id.* ("On November 2,

2011, [Movant] sent [a] Gigatribe user . . . the message, 'hello, can you share pass? *I

have much more to share if you do*.' " (internal quotations omitted)).

18

5.      **Analysis**

In *United States v. Maran*, 531 Fed. Appx. 999 (11th Cir. 2013), the Eleventh Circuit affirmed the application of the five-level enhancement at issue here because appellant "acknowledged at his plea hearing that, in response to an email request to trade child pornography, he directed his correspondent to 'send him [an] index sheet' of illicit images in exchange for another set of images, which he later sent to the correspondent after receiving several images of child pornography." *Id.* at 1000; *see id.* at 1000-01 (Appellant's "conduct, his admissions, and his consistent use of the word 'trade' to describe his interactions with other child pornography collectors were sufficient to support a determination that he distributed child pornography with the reasonable expectation or belief of receiving child pornography in return, not simply that he gratuitously shared those illicit images with others."). In *United States v. Bailey*, 494 Fed. Appx. 13 (11th Cir. 2012), the Eleventh Circuit affirmed the application of the five-level enhancement as follows:

> Based on the evidence presented below, the district court did not plainly err in applying the five-level sentence enhancement. The online communication between Bailey and the undercover agent, Detective Ramos, as well as Bailey's protective file distribution habits, sufficiently link Bailey's distribution of child pornography with the expectation of receiving child pornography in return. After Bailey initiated a private conversation with Detective Ramos, the detective asked Bailey, "what do

19

you like," as well as whether Bailey preferred images of boys or girls. It was only after Detective Ramos asked these questions, creating an expectation that Detective Ramos would send Bailey child pornography to match Bailey's pornographic interests, that Bailey shared his password-protected child pornography files and their respective passwords.

Further, other portions of the record provide additional evidence to establish Bailey's expectation of an exchange of pornographic material: (1) defense counsel's statement during the sentencing hearing that Bailey received the child pornography files by "swapping images with people on the internet"; (2) defense counsel's statement during the sentencing hearing that when sending child pornography, Gigatribe users "send you what they have, you send what you have"; and (3) the inclusion of a psychologist's report in Bailey's sentencing memorandum, highlighting Bailey's admission that he "exchanged images of child pornography with select individuals on a file sharing service (Gigatribe)." Ultimately, Bailey's conversation with Detective Ramos, in conjunction with the other statements by defense counsel and by Bailey himself, constitute the direct and circumstantial evidence necessary to show that Bailey reasonably believed that he would receive something of value by making his child pornography files available for distribution.

*Id.* at 15-16 (internal quotations omitted); *see id.* at 15 (citing *United States v. Cote*, 482 Fed. Appx. 373 (11th Cir. 2011), to the effect that "even without an explicit *quid pro quo* agreement with another distributer of child pornography, a person may engage in such conduct with the reasonable expectation of an exchange" (internal quotations omitted); also citing *Cote* for its "holding that the five-level enhancement applied to a defendant who used the Gigatribe peer-to-peer file-sharing program to download,

20

post, and share child pornography; who knew how to use the program to search for and download child pornography; who stored his child pornography in a shared file available for download by other users; who invited others to download his files; and who expressly asked the undercover officer whether the officer had files to share"); *but see United States v. Waring*, 506 Fed. Appx. 869, 870-71 (11th Cir. 2013) (citing *Spriggs*, 666 F.3d at 1288, to the effect that "the [Section 2G2.2(b)(3)(B)] enhancement was misapplied because there was no evidence the defendant and 'another user conditioned their decisions to share their illicit image collections on a return promise to share files,' and . . . a mere 'hope of receiving more pornography' is insufficient to justify the enhancement"; also citing *United States v. Vadnais*, 667 F.3d 1206, 1209 (11th Cir. 2012), to the effect that "the enhancement was inapplicable because the defendant merely installed and used LimeWire [peer-to-peer file-sharing software] to download child pornography in a manner that permitted other users to obtain his shared child pornography files [—] more must be required for the five-level enhancement; there must be direct or circumstantial evidence that the defendant reasonably believed he would receive something of value by making his child pornography files available for others to download" (internal quotations omitted)).

In *Waring*, even though the error in applying the five-level enhancement was

plain, the Eleventh Circuit nevertheless affirmed appellant's sentence on direct appeal. *Waring*, 506 Fed. Appx. at 871.  The Court did so because his sentence was below the guideline range of 151-188 months that would have obtained after removing the enhancement, "and there [was] no evidence suggesting the district court would have gone lower, especially in light of the court stressing the need for deterrence, the alarming scope of the offense, and the impact of [appellant's] crimes on the child victims."   *Id.*   Appellant could not show "a reasonable probability that a do-over would more likely than not produce a different result."   *Id.* (internal quotations omitted).

Here, there is little doubt, based on Movant's attempts to exchange his own child pornographic images for those of others — as outlined in the PSR excerpts cited above, which are undisputed in the record — that the five-level enhancement for distributing child pornography "for the receipt, *or expectation of receipt*, of a thing of value, but not for pecuniary gain," U.S.S.G. § 2G2.2(b)(3)(B) (emphasis added), was properly applied in this case, and that Movant's defense attorneys did not provide ineffective assistance by failing to challenge the enhancement.  Simply put, Movant was not prejudiced by counsel's failure to raise a challenge that would have failed. There is abundant, undisputed direct and circumstantial evidence that Movant

22

"reasonably believed he would receive something of value by making his child pornography files available for others to download." *See Waring*, 506 Fed. Appx. at 871 (internal quotations omitted); (*see also* PSR ¶¶ 13-14, 20; Doc. 35 at 54-57). And it is apparent from the Court's comments at sentencing (*see* Doc. 43-1 at 20, 22) that Movant's sentence would not have been any different had the Court sustained an objection to the enhancement. *See Waring*, 506 Fed. Appx. at 871. Or at least Plaintiff cannot show otherwise. Ground One therefore fails.

Finally, the Court declines Movant's invitation in Ground Three to overrule binding Eleventh Circuit precedent by holding that there is a *mens rea* element to the Sentencing Commission's definition of distribution in U.S.S.G. § 2G2.2(b)(3). *See Creel*, 783 F.3d at 1358 (holding that the definition of "distribution of child pornography" in U.S.S.G. § 2G2.2(b)(3) "does not require an offender to know that he made child pornography accessible to others"); *see id.* at 1360 ("If the Sentencing Commission meant to require knowledge, it would have said as much." (internal quotations omitted)). And, in any event, as all the evidence reveals, there is no doubt that Movant knew that he was sharing child pornography using Gigatribe.

## III.   Certificate of Appealability

A § 2255 movant must obtain a certificate of appealability ("COA") before

23

appealing the denial of a motion to vacate.   28 U.S.C. § 2255(d); 28 U.S.C. § 2253(c)(1)(B).  A COA may issue only when the movant makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the [motion to vacate] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations omitted).  A movant need not "show he will ultimately succeed on appeal" because "[t]he question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir.) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 337, 342 (2003)).  Although *Slack* involved an appeal from the denial of a 28 U.S.C. § 2254 petition, the same standard applies here.  *See Jones v. United States*, 224 F.3d 1251, 1254 (11th Cir. 2000) (applying *Slack* standard in § 2255 case).  Because there is no reasonable argument that Movant has set forth a meritorious claim in his § 2255 motion, a COA should not issue in this matter.

## IV.    <u>Conclusion</u>

For the foregoing reasons, **IT IS RECOMMENDED** that the Court **DENY** Movant's 28 U.S.C. § 2255 motion (Doc. 38) and **DENY** Movant a certificate of

appealability.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**SO RECOMMENDED** this 21st day of March, 2016.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

25